**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Steven Roy Randall and Jill Renee Bedow,

Plaintiffs,

v.

Minnesota Comprehensive Epilepsy Program, Robert Jerome Gumnit, M.D., Ilo Elmar Leppik, M.D., Douglas Heck, St. Joseph's Medical Center, Brainerd, Minnesota, Thomas Pusak, Administrator, Nicholas Bernier, M.D., John C. Hammerly, M.D., Minnesota Department of Human Services, Michael O'Keefe, Commissioner, Crow Wing County Social Services, Susan Beck, Director, Susan Mezzenga, Supervisor of Developmentally Disabled, Linda Auger, Steven Randall's Former Case Manager, Sheri Mikish, Steven Randall's Case Manager, County of Crow Wing, James Hill, sued as James "Jim" Hill - Crow Wing County Commissioner, Ed Larson, Crow Wing County Commissioner, Gilbert Dewes, Crow Wing County Commissioner, John R. Ferrari, Crow Wing County Commissioner, Terry Sluss, Crow Wing County Commissioner, Don Ryan Crow Wing County Attorney,

Defendants.

Civil No. 00-2067 (DWF/RLE)

**ORDER AND MEMORANDUM**

The above-entitled matter is before the Court on Plaintiffs' Motion for Injunctive Relief. Based upon the submissions of the Plaintiffs, the file, all records, and being otherwise duly advised in the premises, the Court hereby enters the following:

FILED NOV - 1 2000
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

**ORDER**

1. Plaintiffs' Motion for Injunctive Relief (Doc. No. 9) is **DENIED**.

Dated: November 1, 2000

DONOVAN W. FRANK
Judge of United States District Court

**MEMORANDUM**

The facts underlying the Complaint in this matter are detailed in the Court's Order dated October 27, 2000 (Docket Number 10). Essentially, Plaintiff Steven Roy Randall has suffered from a variety of problems, most notably a seizure disorder and impaired cognitive function, since a motorcycle accident in 1991. The Complaint appears to be a claim under the Americans with Disabilities Act ("ADA") against the various state welfare agencies and care providers who have been involved in Mr. Randall's convalescence. The record to date indicates that the Complaint has not yet been served upon any of the named Defendants.

On October 26, 2000, Plaintiffs sought immediate relief for Mr. Randall, who was then in the hospital. In that motion, the Plaintiffs requested the Court to compel Defendant St. Joseph's Medical Center or an ambulance service (not a party to this litigation) to pay to have Mr. Randall transported to another medical facility of Plaintiffs' choosing. The Court denied that request because Plaintiffs failed to allege that Mr. Randall would enjoy medical benefit from such a transfer and failed to allege any legal basis for holding either St. Joseph's or the ambulance service financially accountable.

Mr. Randall has now apparently been discharged from the hospital, his most emergent medical concerns at least temporarily resolved. However, in light of the real possibility that

Mr. Randall will again need medical assistance, Plaintiffs have now brought this motion requesting the Court to enter an Order which would allow Mr. Randall's family to transport Mr. Randall to any hospital in the State of Minnesota and require either Medicaid or the Minnesota Department of Human Services to cover the expenses of that transportation. It is unclear whether the Plaintiffs wish to transport Mr. Randall for immediate care or only in the event of some future emergency.

This motion is, at best, premature. The Defendants in this case have not yet been served with the Complaint, and there is no evidence that any attempt has been made to serve these preliminary motions upon the appropriate parties. Moreover, the Plaintiffs have not set forth any facts which would seem to tie the relief requested in the instant motion to any allegations made in the Complaint. In other words, it is not at all clear to the Court that there is any factual or legal link between the relief sought through this motion and the legal violations alleged in the Complaint; the Court cannot see how any ADA violations by the Defendants would obligate Medicaid or the Minnesota Department of Human Services to pay for emergency medical transportation in excess of any statutory obligations they now have.

The Court cannot on the record before it provide the Plaintiffs with *carte blanche* to transport Mr. Randall to any hospital in the state, either for emergency treatment or for ongoing treatment of his seizure disorder, and guarantee that one of the named state agencies will pick up the tab regardless of circumstances. The relief Plaintiffs are requesting is quite extraordinary. With nothing more than the bald assertions of the Plaintiffs that the Defendants have violated any legal obligations, the Court cannot grant such relief.

The Court notes that part of the problem in this case is Plaintiffs' lack of legal representation. While Plaintiffs certainly have every right to pursue this matter *pro se* and while

the Court understands that financial constraints may make it difficult to obtain counsel, Plaintiffs would certainly benefit from the advice of an attorney. An attorney could help the Plaintiffs to understand the true scope of their rights, the realistic possibilities for remedies, and the correct way to go about vindicating those rights and pursuing those remedies. Such guidance is particularly important where, as here, the cause of action is legally complicated and the stakes–Mr. Randall's health and well-being–are so high. To that end, if the Plaintiffs request a referral to the Volunteer Lawyers Network ("VLN"), the Court will provide such a referral. There is no guarantee that the VLN will be able to find a lawyer willing to take on this matter free of charge, but it is possible. Again, the Court strongly urges the Plaintiffs to request a referral to VLN or to find an attorney through other means, so that Plaintiffs have professional guidance in their lawsuit.

D.W.F.